UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUAN SEDE** | **CIVIL ACTION** |
| **VERSUS** | **NO: 23-586** |
| **TYLER BULLOCK ET AL.** | **SECTION: "H"** |

## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment on the Issue of Liability (Doc. 47). Oral argument was held on May 16, 2024. For the following reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

This case arises out of a motor vehicle accident that occurred on March 22, 2021, at the intersection of St. Claude Avenue and Caffin Avenue in New Orleans, Louisiana. Plaintiff Juan Sede, operating a 2019 Harley Davidson motorcycle, and Defendant Tyler Bullock, operating a 2020 International Utility Truck ("the Utility Truck"), were stopped at a red light at the intersection. Plaintiff was behind the Utility Truck on St. Claude Avenue, and both parties were in the left lane of the road at the time because the right lane was coned off due to construction. When the light turned green, Plaintiff alleges that Defendant Bullock turned right "in front of him" onto Caffin Avenue, dragging along Plaintiff's motorcycle and causing a collision.

1

Plaintiff filed a petition in the Civil District Court for the Parish of Orleans, asserting claims of negligence against Defendants Tyler Bullock; Volt Power, LLC; and Greenwich Insurance Company (collectively "Defendants"). Plaintiff alleges that at the time of the collision Bullock was acting in the course and scope of his employment with Volt Power, LLC, and Volt Power, LLC was the registered owner of the Utility Truck. Plaintiff further alleges that Greenwich Insurance Company provided a policy of insurance to Volt Power, LLC covering the Utility Truck. The case was removed to this Court on February 15, 2023 on diversity grounds.

On May 16, 2024, this Court granted in part Plaintiff's Motion in Limine to Exclude Testimony of Len Major.[1] Now before the Court is Defendants' Motion for Summary Judgment on the Issue of Liability. Plaintiff opposes.[2]

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[4] Nevertheless, a dispute about a material fact is "genuine" such that summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

---

[1] Doc. 65. Accordingly, in considering this motion, the Court disregards Len Major's opinions as to the cause or fault of the accident. *See id.*
[2] Docs. 60 & 61.
[3] FED. R. CIV. P. 56.
[4] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[5] *Id.* at 248.

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[6] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[7] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[8]

"In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[9] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[10] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[11]

## LAW AND ANALYSIS

Defendants argue that they are entitled to summary judgment on the issue of liability because "Mr. Sede's failure to properly control his motorcycle

---

[6] Coleman v. Hous. Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[7] Engstrom v. First Nat'l Bank, 47 F.3d 1459, 1462 (5th Cir. 1995).
[8] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[9] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[10] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[11] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

3

was the sole cause of the accident."[12] Plaintiff responds that Defendant Bullock is held to a higher standard under Louisiana law as a CDL driver, and material issues of fact remain for trial, namely whether Defendant Bullock used his turn signal before effectuating the right-hand turn and "whether this was a rear-end collision."[13]

This diversity action is governed by Louisiana tort law.[14] "Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under La. Civ. Code art. 2315."[15] Under this analysis,

> a plaintiff must prove five separate elements: "(1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injury; and (5) actual damages.[16]

"A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability."[17]

Defendant argues that there remains no material issue of fact as to whether Plaintiff was the sole cause of the accident, citing Louisiana Revised Statutes § 32:81. Section 32:81 provides that:

> The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.[18]

---

[12] Doc. 47-1 at 7.
[13] Doc. 61 at 10–12.
[14] Gasperini v. Ctr. for Humanities, Inc., 518 U,S, 415, 427 (1996).
[15] Prisonneault v. Merchants & Farmers Bank & Trust Co., 816 So. 2d 270, 275–76 (La. 2002).
[16] *Id.* (citing Roberts v. Benoit, 605 So. 2d 1032 (La. 1991); Fowler v. Roberts, 556 So. 2d 1, 4 (La. 1989); Mundy v. Dep't of Health & Human Res., 620 So. 2d 811 (La. 1993); Thomas C. Galligan, Jr., *A Primer on the Patterns of Negligence*, 53 LA. L. REV. 1509, 1510 (1993)).
[17] Pottinger v. Price, 289 So. 3d 1047, 1055 (La. App. 1st Cir. 2019) (citing Lemann v. Essen Lane Daiquiris, Inc., 923 So. 2d 627, 632–33 (La. 2006)).
[18] LA. REV. STAT. § 32:81.

"Louisiana courts have uniformly held that a following motorist in a rear-end collision is presumed to have breached the standard of conduct prescribed in La. Rev. Stat. Ann. 32:81 and hence is presumed negligent."[19] And "the risk of a rear-end collision (whether the collision occurs in an emergency lane, or in a travelled portion of a roadway) is clearly within the scope of the statutory prohibition against following too close."[20]

Defendants aver that the "undisputed evidence clearly proves that Mr. Sede was the following motorist and rear-ended Mr. Bullock because he was following too closely, failed to keep a proper lookout, or failed to keep his motorcycle under control."[21] In support, Defendants cite to the depositions of Mr. Sede and Mr. Bullock, which provide the following undisputed facts. Mr. Sede stopped his motorcycle directly behind Mr. Bullock's Utility Truck at the red light on St. Claude Avenue.[22] The right lane and bus lane were closed and coned off, so all motorists were restricted to a single lane of travel—the left lane—on St. Claude Avenue.[23] After the light turned green, Mr. Bullock began making a wide right-hand turn, and the front of Mr. Sede's motorcycle somehow came into contact with the back right corner of Mr. Bullock's truck.[24]

---

[19] Mart v. Hill, 505 So. 2d 1120, 1123 (La. 1987) (citing Eubanks v. Brasseal, 310 So. 2d 550, 553 (La. 1975); Prest v. State Dep't of Transp., 490 So. 2d 659 (La. App. 2d Cir. 1986); Lewis v. Variste, 422 So. 2d 222 (La. App. 4th Cir. 1982)).
[20] *Id.*
[21] Doc. 47-1 at 10.
[22] Doc. 47-6 at 36.
[23] *Id.* at 36–37; Doc. 47-5 at 116.
[24] The parties, however, dispute exactly how Mr. Sede's motorcycle came into contact with the truck. Plaintiff also argues that this was not a "rear-end" collision, as he did not hit the bumper of the Utility Truck. Doc. 47-6 at 52. Plaintiff, however, answered affirmatively when asked if "the right side of [his] motorcycle [got] connected to something at the rear of [Mr. Bullock's] bucket truck." *Id.* Nevertheless, the photos attached to Defendants' motion show the point of collision at the back right side of the truck. *See* Doc. 47-7 at 130, 132–34.

5

Mr. Bullock was driving no more than 5 or 6 miles per hour, while Mr. Sede was driving 2 miles per hour.[25]

Considering the foregoing deposition testimony and photos of the point of impact, the Court finds that the presumption of liability resulting from a violation of the duty set forth by Louisiana Revised Statutes § 32:81 applies. At all pertinent times, both Mr. Sede and Mr. Bullock were restricted to a single lane of travel, thereby rendering Mr. Sede the "following" vehicle in relation to Mr. Bullock. Mr. Sede stated in his deposition that he was not attempting to pass Mr. Bullock while the truck was making a right turn, and there is likewise no summary judgment evidence that Mr. Bullock left the lane of travel before effectuating his wide right turn. Accordingly, the Court finds that Plaintiff, as the "following" driver at all pertinent times had a duty to refrain from following Mr. Bullock more closely than is reasonable and prudent, having due regard for the speed of Mr. Bullock's truck and the traffic upon and the condition of the highway.

As the following motorist in a collision with the rear of a preceding vehicle, Plaintiff is presumed to have breached this duty,[26] which resulted in the collision with the back right corner of the Utility Truck while Mr. Bullock was effectuating a wide right turn.[27] Accordingly, this Court finds that Defendants have carried their burden in demonstrating the absence of a material fact as to liability.

---

[25] Doc. 47-6 at 48; 47-5 at 64.

[26] *See, e.g.*, Ebarb v. Matlock, 69 So. 3d 516, 521 (La. App. 2d Cir. 2011); Leblanc v. Bouzon, 159 So. 3d 1144, 1146 (La. App. 3d Cir. 2015); Watson v. Smith, 247 So. 3d 811, 817 (La. App. 4th Cir. 2018).

[27] While Plaintiff argues that the collision was not in fact a "rear-end" collision, classification as a "rear-end" collision is immaterial to Defendants' Motion. Rather, the Court is concerned with whether the risk and harm caused are within the scope of protection afforded by the duty breached. *Mart*, 505 So. 2d at 1123. And a following driver's collision with the back right side of a leading vehicle is clearly within the scope of the statutory prohibition against following another vehicle too closely.

The burden therefore shifts to Plaintiff to demonstrate that a material issue of fact remains as to his liability.[28] Plaintiff points to the "issue of the blinker" as a material issue of fact that remains.[29] The Court, however, finds this factual issue immaterial to the issue of liability.

"A following motorist may . . . rebut the presumption of negligence by proving the following things: (1) that he had his vehicle under control, (2) that he closely observed the preceding vehicle, and (3) that he followed at a safe distance under the circumstances."[30] Indeed, Mr. Sede stated in his deposition that he stopped about three or four feet behind the Utility Truck.[31] And after the light turned green, Mr. Bullock made the wide right turn while Mr. Sede drove forward, and in that process, "the distance of three feet was closed" causing the collision.[32]

Plaintiff, however, fails to demonstrate how the issue of whether Mr. Bullock used his turn signal while making a right turn at approximately 5 or 6 miles per hour is relevant to whether *Plaintiff*—in the time that "the distance of three feet was closed"—had his vehicle under control, closely observed the Utility Truck, and followed at a safe distance under the circumstances.[33] And

---

[28] "When a following vehicle collides with a preceding vehicle, the following motorist is presumed to be negligent. When this presumption is applied, it effectively shifts the burden of proof to the driver of the following vehicle to prove that he was not negligent." Webb v. Jordan, 540 So. 2d 977, 980 (La. App. 2d Cir. 1989).

[29] Doc. 61 at 11.

[30] Daigle v. Mumphrey, 691 So. 3d 260, 262 (La. App. 4th Cir. 1997) (citing Chambers v. Graybiel, 639 So. 2d 361, 366 (La. App. 2d Cir. 1994), *writ denied*, 644 So. 2d 377 (La. 1994)).

[31] Doc. 47-6 at 43–44.

[32] *Id.* at 49.

[33] Conversely, the issue of whether Defendant used a blinker may have been material to causation under a different factual scenario—*i.e.*, where the leading driver suddenly stopped without notice. *See, e.g.*, Pelt v. Home Indem. Co., 118 So. 2d 148, 151–52 (La. App. 1st Cir. 1960) (citing Rouyer v. Horil, 83 So. 2d 396, 397 (La. App. Orleans Par. 1955)). Here, however, the Court notes that immediately prior to the collision, Mr. Sede and Mr. Bullock were completely stopped at a red light, and both began traveling at low speeds once the light turned green. *See id.* (finding that the cause of the accident was not the leading

7

while Plaintiff is correct that Louisiana courts have placed fault on right-turning drivers, each of the cases cited by Plaintiff involved two drivers in parallel lanes, not a single lane, which is factually distinguishable from the case before this Court.[34] Accordingly, the Court finds that Mr. Bullock's alleged failure to use a turn signal is immaterial to the issue of liability in this case.

Plaintiff next argues that "the evidence supports application of the sudden emergency doctrine based on the movements of Mr. Bullock's truck making a quick wide right turn without a right blinker or a late right blinker."[35] Under the sudden emergency doctrine, a "following motorist must show that the lead driver negligently created a hazard which could not reasonably be avoided."[36] Put differently,

> [u]nder the sudden emergency doctrine, a person who finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or the best means to adopt to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to be the better method, unless the emergency is brought about by his own negligence.[37]

---

driver's failure to use a signal, but rather, the following driver's failure to keep a proper lookout, as he "still has the obligation of having his car under such control as to enable it to stop in time to avoid colliding with the car ahead in the event of a sudden stop").

[34] Smith v. Vasquez, 933 So. 2d 878 (La. App. 4th Cir. 2006) (attributing 100% fault to driver in the bus lane where two parallel drivers—one in the lane closest to the curb designated as a bus stop and one in the rightmost lane designated for travel—collided as both were executing a right turn); Winfield v. Dih, 816 So. 2d 942 (La. App. 4th Cir. 2002) (finding the driver who was traveling in bus lane 100% at fault where the two drivers—one in the bus lane and one in the rightmost lane of travel—collided as both were executing a right turn); Spears v. Aguilar, 436 So. 2d 672 (La. App. 4th Cir. 1983) (finding concurrent negligence of both drivers *with respect to a third-party passenger* of the bus where a bus turned from the right travel lane and struck a taxi driver in the bus lane). Plaintiff stated in his deposition that he was not trying to pass the Utility Truck.

[35] Doc. 61 at 12.

[36] Holland v. State Farm Mut. Auto. Ins. Co., 973 So. 2d 134, 137 (La. App. 2d Cir. 2007).

[37] *Id.*

The Court notes, however, that Mr. Bullock was traveling at a slow rate of approximately 5 or 6 miles per hour. Moreover, the fact that the right rear area of the truck was involved in the accident indicates that Mr. Bullock was well into his turn when the collision occurred. "Thus, had [Plaintiff] maintained a proper lookout, he would or should have noticed the [truck] in time to avoid a collision."[38] The summary judgment evidence produced fails to demonstrate that Mr. Bullock's wide right turn effectuated at a low speed—regardless of whether he used his turn signal—placed Plaintiff in a position of "imminent peril, without sufficient time to consider and weigh all of the circumstances."[39] Accordingly, the Court finds that Plaintiff has failed to carry his burden in showing that the sudden emergency doctrine applies.

Plaintiff next argues that Mr. Bullock had a valid CDL and is therefore held to a higher standard under Louisiana law. Indeed, the Louisiana Supreme Court has recognized that "a professional truck driver is a superior actor in the eyes of the law" and is therefore "held to a high standard of care to the motoring public."[40] Plaintiff, however, fails to explain how Mr. Bullock breached this heightened duty of care. A bare allegation that Mr. Bullock has a higher standard of care—without any summary judgment evidence demonstrating how he breached that standard of care—is insufficient to satisfy Plaintiff's shifting burden at the summary judgment stage.

Lastly, in his opposition brief, Plaintiff appears to now assert an independent cause of action for Mr. Bullock's failure to stop immediately after Mr. Sede's motorcycle made contact with the truck. Plaintiff avers that, "had Mr. Bullock seen Mr. Sede and stopped, Mr. Sede would have not been injured

---

[38] Spears v. Aguilar, 436 So. 2d 672, 675 (La. App. 4th Cir. 1983).
[39] *Holland*, 973 So. 2d at 137.
[40] Davis v. Witt, 851 So. 2d 1119, 1129 (La. 2003) (collecting cases).

at all or so badly."[41] Even assuming the summary judgment evidence presented by Plaintiff shows the existence of a material issue of fact as to this claim, it is well established that "a plaintiff cannot allege facts to raise a new claim for the first time in a memorandum in opposition to a motion for summary judgment."[42]

> In his state court petition, Plaintiff alleged that Defendant Bullock
>
> was negligent in that he, among other things, failed to operate the car []he was driving at a safe speed, failed to yield, failed to keep a diligent and proper lookout, failed to take evasive maneuvers to avoid a collision, drove when overly distracted and otherwise failed to operate in a reasonable and safe manner under the circumstances.[43]

In the "Facts" section of his petition, Plaintiff only charges Defendant with failure to take evasive action *before* impact. Moreover, Plaintiff alleges that he suffered injuries "[a]s a result of the impact"—not as a result of this new allegation that Mr. Bullock should have stopped sooner than he did.[44] Accordingly, this Court finds that Plaintiff is precluded from raising this new claim of negligence in his memorandum in opposition to Defendants' Motion for Summary Judgment.

---

[41] Doc. 61 at 10.

[42] M.P. Am. Economy Ins. Co., 377 So. 3d 798, 804 (La. 2023) (citing Williams v. Nelson, 263 So. 3d 466, 476–77 (La. App. 5th Cir. 2018); Stuckey v. Republic Fire & Cas. Ins. Co., No. 19-445, 2020 WL 104382, at *3 (La. App. 1st Cir. 2020)). *See also* United States *ex rel.* DeKort v. Integrated Coast Guard Sys., 475 F. App's 521, 522 (5th Cir. 2012) (quoting Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314–15 (11th Cir. 2004)) ("[T]he Supreme court has mandated a liberal pleading standard for civil complaints . . . . This standard however does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage . . . . At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with FED. R. CIV. P. 15(a)."); Fisher v. Metro. Life Ins. Co., 895 F.2d 1073, 1078 (5th Cir. 1990).

[43] Doc. 1-1 at 4.

[44] *See id.* at 3.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment on the Issue of Liability is **GRANTED**. **IT IS ORDERED** that Plaintiff's claims against Defendants are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana this 21st day of May, 2024.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**